UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY V., on her own behalf<br>and on behalf of B. G., her daughter,<br><br>    Plaintiffs,<br><br>    v.<br><br>PITTSBURGH PUBLIC SCHOOLS<br>FRICK MIDDLE SCHOOL and<br>DR. WAYNE WALTERS, Principal of<br>Frick Middle School,<br><br>    Defendant. | Ca. No.<br><br><br>Jury Trial Demanded |

# COMPLAINT

## Jurisdiction

1. This court has jurisdiction over this matter by virtue of 28 U.S.C. §1331. Plaintiffs proceed under Title IX of the Education Act, 20 U.S.C. §1681(a) et seq, and 42 U.S.C. §1983 for retaliation. The plaintiffs also ask this court to assume supplemental jurisdiction over claims under the Pennsylvania Fair Educational Opportunities Act (PFEOA), by virtue of 28 U.S.C. § 1367.

## Parties

2. Mary V. is an adult individual residing in the Western District of Pennsylvania.

3. B. G. is a minor born in 1995. She is represented in this action by her mother Mary V.

4. The defendant, Pittsburgh Public Schools, is a governmental entity which provides free public education to students in the Pittsburgh area.

5. The defendant, Dr. Wayne Walters, is the principal of Frick Middle School.

**Statement of the Facts**

6. B. G. was a student enrolled at Frick Middle School. She was in the Magnet Program and was a straight "A" student. She was also very active in her community and participated in many volunteer programs.

7. B. G. was in sixth grade in the 2006-2007 school year. During that school year, three boy began to harass her and call her names. B. G. was harassed on a daily basis by these boys. They would call her names and make comments about her appearance. The offensive comments explicitly and implicitly conveyed the message that B. G. was unattractive and overweight. The comments were sexual in nature or conveyed sexual stereotyping. The harassment was of a continuous and ongoing pattern.

8. In March of 2007, the boys were calling B. G. names during class. When B. G. began to cry, their teacher sent B. G. and the boys to the guidance counselor, Darlene Epps. Epps did nothing to stop the harassment and did not notify May V. of the ongoing harassment. If fact, Epps made the comment to the effect that boys will be boys and they must like B.G. if they are teasing her. This was her response to the daily harassment B.G. faced at the hands of these boys.

9. The visit to the guidance counselor resulted in a lull in the harassment for a short period of time, but it was not long before the boys began harassing B. G. again. She endured the harassment for her entire sixth grade year without relief.

10. B. G. returned to Frick Middle School in 2007-2008 for her seventh grade year and the harassment began again. Two other boys joined in the name calling. Consequently, there were five boys harassing B. G. and calling her names on a daily basis.

11. The conduct of the boys was open and apparent to bystanders. Some other students tried to shame the boys about the conduct. However, no faculty member or other school official intervened.

12. The boys would make comments about B. G.'s lunch. And would call her fat while she was trying to eat. This constant harassment eventually would effect B. G.'s health. B. G. began to throw her lunch away rather than eat in front of the boys and endure their constant teasing and comments about her weight.

13. In December 2007 B. G. went on a field trip with her class to Funfest to go bowling. The boys continued to harass B. G. on this field trip. They replaced her name on the bowling screen with degrading, mean-spirited names. Nothing was done by the chaperones attending the event.

14. Shortly after the field trip B. G. broke down and told her mother about the constant teasing. By this time, B. G. had developed anorexia nervosa as a result of almost two years of continued harassment.

15. In January 2008 Mary V. had a meeting with the administration and discovered they knew of the harassment and failed to inform her. On the day of the meeting B. G. was sent to the cafeteria where the boys continued to make cruel remarks about her anorexic condition.

16. An investigation was eventually conducted by the school and resulted in a one day suspension for each of the boys. It was too little, too late for B. G. She had already been deprived of the right to an education, because of her gender.

17. B. G. was admitted to Western Psychiatric's intensive outpatient program February 11, 2008 to learn to cope with her eating disorder. Her weight was dangerously low and on February 21, 2008 she was admitted to the inpatient program.

18. While B. G. was in the hospital, Mary V. attempted to secure her school records so B. G. could be home-schooled when she was released, since it was obvious the School District was not going to protect B. G. As a result of this, Mary V. began facing hostility from the administration.

19. After experiencing this hostility, Mary V. made numerous calls to the Board of Education's Student Services Hotline where she registered two complaints against Dr. Walters regarding the treatment of her daughter. The complaints were made February 19, 2008 and March 6, 2008.

20. Mary V. also wrote a letter to the State Representative, both State Senators, and the Mayor on March 5, 2008, detailing the harassment and discrimination her daughter faced. She sent a copy of that letter to the Superintendent on March 12, 2008.

21. Mary V. also contacted the Community Justice Center about the bullying of her daughter. She attempted to contact the Superintendent on numerous occasions and she also spoke with someone in the Mayor's office after sending the March 5th letter.

22. Senator Jane Orie referred Mary V. to Richard Garland from One Vision One Life. Garland made a call to the school on or about March 7, 2008 to speak with Dr. Walters.

23. As a result of Mary V.'s numerous complaints, and attempts to get help for her daughter, the Principal of Frick Middle School, Dr. Wayne Walters, retaliated against her.

24. The retaliation consisted of the filing of false and frivolous criminal charges. Walters initiated charges against Mary V. for disorderly conduct on March 28, 2008. The charges were dismissed. The school remained uncooperative, and would not help Mary V. set up home schooling for her daughter.

25. The School District deprived B. G. of her right to an education free from harassment.

26. The School District and Walters retaliated against Mary V.

### Causes of Action

### Count I
### Claim Under Title IX

27. Title IX of the Education Act provides, with certain exceptions, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. §1681(a).

28. The Pittsburgh Public Schools receive federal financial assistance.

29. The School District officials knew B. G. was being harassed at school. Her teachers, the counselor and the principal were all aware of her harassment.

30. They failed to act, they failed to discipline the boys in a timely manner, they failed to take steps to protect B. G., as a consequence, B. G. was subjected to severe and significant sexual harassment.

31. The failure to stop the harassment amounts to deliberate indifference to the rights of B. G. to enjoy educational opportunities on an equal basis with the other students.

32. The conduct of the five boys described above constitutes sexual harassment. As a result of the harassment, B. G. was excluded from school by virtue of her sex.

33. The Pittsburgh Public Schools have inadequate disciplinary policies, procedures, and protections related to sexual harassment.

34. The Pittsburgh Public School District and officials who had authority to proscribe the sexual harassment had actual knowledge of the circumstances of harassment directed at B. G..

35. In the face of that knowledge, the administrators, teachers and counselors who had the ability to alter the situation were deliberately indifferent to the harassment directed at B. G.. Consequently the boys became emboldened by the discovery that their activities and inappropriate conduct would not be curtailed or punished. They even taunted B. G. about her reporting their behavior. In effect, school officials became sponsors of the perpetrators' behavior.

36. The harassment in this case occurred on school property and during school time. The defendant retained substantial control over the conduct of the boys, yet failed to take any action to stop the conduct or remove the boys from the school.

37. B. G. was excluded from the educational programs offered by the Pittsburgh Public Schools because the sexual harassment inflicted on her was so severe that she could not bear the day-to-day trauma of being in school. In fact, she was hospitalized for a period of time as a result of the harassment.

## Count II
## Claim under PFEOA

38. The Pennsylvania Fair Education Opportunities Act provides in pertinent part "It is hereby declared to be the policy of this Commonwealth that all persons shall have equal opportunities for education regardless of their race, religion, color, ancestry, national origin, sex, handicap or disability." 24 P.S. §5002(a). It further states, "[I]t shall be an unfair educational practice for an educational institution - - (1) to exclude or limit, or otherwise discriminate, because of race, religion, color, ancestry, national origin, sex, handicap or disability, against any student or students seeking admission as students to such institutions..." 24 P.S. §5004(a).

39. The plaintiffs have exhausted their administrative remedies under this cause of action.

40. The conduct described above under Count I also violates the PFEOA.

41. B.G. is a young female and was harassed because of her sex. The harassment was severe, pervasive and regular. It occurred on a daily basis for two school years. As a result of the continued sexual harassment, B.G. was hospitalized with anorexia. She lost over 30 pounds as a result of the continued harassment.

42. The school district did nothing to stop the sexual harassment of B.G. despite its knowledge of these acts. The guidance counselor had one meeting with B.G. in which her harassers were present. The counselor did not initiate any followup with B.G. after this initial meeting. The sexual harassment just continued unabated. The administration failed to protect B.G., and failed to discipline the boys in an effort to curb their activities.

### Count III
### Mary V. on her own behalf
### vs. Pittsburgh Public Schools
### 42 U.S.C. §1983 and Title IX

43. Mary V. wrote a letter to her State Representative, State Senators, the Mayor, and to the Superintendent of the Pittsburgh Public Schools about the harassment of her daughter. She also filed two complaints against the Principal, and contacted the Community Justice Center in Pittsburgh.

44. Mary V. engaged in activity protected by Title IX and by the First Amendment to the Constitution. Specifically, she reported the harassment of her daughter and pressed the School District to end the harassment. She reported the School District's indifference to her daughter's victimization to her State Representative, State Senators, Mayor, and to the Superintendent. She also filed two complaints against Principal Walters with the Board of Education. This activity angered the middle school principal and prompted him to retaliate against her.

45. The Frick Middle School Principal, Dr. Walters, initiated false and frivolous criminal charges against Mary V. for disorderly conduct. Mary V. was simply advocating for her daughter. As a result of the charges, Mary V. was forced to appear and defend herself at the District Magistrate's office.

46. The charges against Mary V. were dismissed.

47. The conduct of Dr. Walters was retaliatory and injured the Plaintiffs and has the potential for chilling First Amendment activity and activity protected by Title IX. The conduct also violates the Plaintiffs' rights under Title IX of the Education Act and 42 U.S.C. §1983.

48. Mary V. has suffered injury as a result of the conduct of the Defendants. She has been anxious concerning the progress of B. G., the rights of B. G. to a free and public education have been damaged, and she has suffered emotional distress.

49. Mary V. also suffered emotional distress at the thought of criminal charges being brought against her and having to defend herself in court.

**Damages**

50. B. G. has been severely and significantly injured as a result of the conduct of the Defendant. B. G. has been subjected to a continuous period and pattern of harassment that drove her from the school.

51. B. G. has suffered severe emotional distress and was hospitalized with anorexia as a result of the harassment. She was forced out of school for a period of time and was home schooled. She was an A student in accelerated classes and her education was interrupted. She is now attending private school which requires her mother to pay tuition each year. She has also missed out on opportunities and scholarships provided to graduates of the Pittsburgh Public Schools with above average grades such as The Pittsburgh Promise.

52. Mary V. has also suffered severe and significant injuries as a result of the retaliation of the Defendants. She suffered anxiety, fear and concern for her daughter and herself. The retaliation against Mary V. is outrageous and she seeks punitive damages from the individual defendant who is sued in his personal capacity.

WHEREFORE, Plaintiff, on behalf of herself and her daughter, request this Court enter judgment in an amount significant to compensate herself and her daughter for all injuries suffered

9

by them, award their attorney fees, and enjoin the School District to enact, adopt, and enforce adequate policies, procedures, and practices to ensure that students are not subjected to peer-on peer sexual harassment and to provide such other relief as is just and appropriate.

Respectfully submitted,

 /s/ Edward A. Olds
Edward A. Olds, Esquire
Pa. I.D. No. 23601
*Attorney for Plaintiff*
1007 Mount Royal Boulevard
Pittsburgh, PA 15223
(412) 492-8975